468 A.2d 633

**Fannie S. ARBESMAN**

v.

**Ephraim WINER.**

**No. 36, Sept. Term, 1983.**

Court of Appeals of Maryland.

Dec. 29, 1983.

**284**

Leslie L. Gladstone, Baltimore, for appellant.

K. Donald Proctor, Towson (Miles & Stockbridge, Towson, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

SMITH, Judge.

We shall hold that in the unique circumstances of this case, where a husband and wife owned land as tenants by the entireties and only the husband gave notice of termination of the tenancy to a tenant at will, an action for repossession of the premises may not be maintained.

Appellee Ephraim Winer and his wife, Ray Winer, own land in Baltimore County as tenants by the entireties. From 1935 to 1948, 1960 to 1964, and 1966 to the present, appellant Fannie Arbesman has lived with the Winers in their home. She has had her own room and the only set of keys to the doors leading into that room. Aside from the fact that Ray Winer kept some private papers there, no one other than Mrs. Arbesman used the room. Mrs. Arbesman has never been requested to pay, nor has she paid, any rent. In recent years she has assisted and cared for her sister, Ray Winer, who has been in poor health.

It seems that on February 17, 1983, Ephraim Winer told his wife that either Fannie Arbesman would have to vacate the residence or he would not return to the home himself. The wife refused to require her sister to leave. The husband left the home and then proceeded to give Fannie Arbesman one month's notice to quit the premises pursuant to Md.Code (1974, 1981 Repl.Vol., 1982 Cum.Supp.) § 8–402(b)(1), Real Property Article. Mrs. Arbesman did not remove herself from the residence. Ephraim Winer then filed suit in the District Court of Maryland to repossess the

premises. Despite Mrs. Arbesman's claim that the wife was a necessary party, the District Court judge determined that the husband could properly maintain the action. He granted restitution of possession of the premises. Mrs. Arbesman appealed to the Circuit Court for Baltimore County.

In the circuit court Mrs. Arbesman filed a motion raising preliminary objection. She contended, among other things, that the suit must be dismissed because the wife was not a party. The wife appeared and testified on that motion. She said that at no time had she agreed to have her sister leave the premises and that she wished her sister to remain there. She further stated that, although she and her husband were not speaking to each other at that time, "[h]e knows, he is aware of the fact that I want her and need her." The circuit court in a de novo trial affirmed the judgment of the District Court. The trial judge noted that Mrs. Arbesman was a tenant at will and Ray Winer was not a necessary party to the action. He reasoned that although tenancy by the entireties property may be leased only by the joint act of husband and wife, the law of property does not require both of them to join in the giving of notice to a tenant at will to quit the premises. He said:

"The Defendant's habitation of the Winer home ceased to be a 'joint act' of husband and wife, as tenants by the entireties, when the Plaintiff withdrew his consent and requested that she vacate the premises. . . . As long as the property is held by the Plaintiff and his wife, Ray Winer, as tenants by the entireties, clearly the Court must follow the law in Maryland and require the consent of both Plaintiff and his wife in order for the Defendant to remain on the premises."

We granted Mrs. Arbesman's petition for writ of certiorari in order that we might address the important public issue here presented.

Mrs. Arbesman argues that she is not a tenant at will but a lodger or boarder and, thus, that her occupancy of the premises may not be terminated in the manner sought to be

done here. In the view we take of this case we find it unnecessary to decide such an issue. We shall assume arguendo that she is in fact a tenant at will.

At common law the husband had control of the property held by the spouses as tenants by the entireties, subject only to the wife's right of survivorship. Thus he alone was entitled to all rents and profits arising from the entireties property during the marriage. *See Schilbach v. Schilbach,* 171 Md. 405, 408, 189 A. 432 (1937); *Masterman v. Masterman,* 129 Md. 167, 174, 98 A. 537 (1916). In order that the whole could remain for the surviving spouse, however, neither spouse could dispose of the property, lease it, or subject it to any lien or encumbrance absent the consent of the other spouse. *See Columbian Carbon Co. v. Kight,* 207 Md. 203, 206, 114 A.2d 28 (1955); *Marburg v. Cole,* 49 Md. 402, 411 (1878).

In the latter part of the last century, many state legislatures passed married women's property acts. Maryland was no exception. The purpose of these acts was to permit married women, in derogation of the common law, to acquire and hold property for their own use. *See Columbian Carbon Co.,* 207 Md. at 208, 114 A.2d 28; *Marburg,* 49 Md. at 412–13. Judge Delaplaine pointed out for the Court in *Columbian Carbon Co.,* "This Court has taken the view that the Married Women's Property Acts were passed by the Legislature to protect the wife's property from the control of the husband, but not to change the nature of her estate." 207 Md. at 208, 114 A.2d 28.

In *Marburg,* 49 Md. 402, Judge Alvey said for the Court:

"By the common law of England, which is the law of this State, except where it has been changed or modified by statute, a conveyance to husband and wife does not constitute them joint tenants, nor are they tenants in common. They are, in the contemplation of the common law, but one person, and hence they take, not by moieties, but the entirety. They are each seised of the entirety, and the survivor takes the whole. As stated by Blackstone,

'husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety, *per tout, et non per my;* the consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor.' 2 Bl.Com. 182." 49 Md. at 411.

*Accord McCubbin v. Stanford,* 85 Md. 378, 390, 37 A. 214 (1897). *See* Annot., 30 L.R.A. 305 (1895). In *Marburg* the Court held that Ch. 162 of the Acts of 1822, now codified as § 2–117, Real Property Article, which provided that no deed, devise, or other instrument of writing should be construed to create an estate of joint tenancy unless so expressly provided, did not affect or apply to such an estate as was conveyed to husband and wife. 49 Md. at 412. It further held that the provisions of §§ 1 and 2 of Art. 45 of the Code of 1860, which authorized a married woman to acquire and hold property as therein provided to her separate use, did not at all affect the nature of the estate conveyed to husband and wife by deed to them jointly. *Id.* at 412–13.

Because the husband's right to rents, profits, and income from the property derived from the common law marital rights and not from the marital estate itself, the married women's property acts did affect this aspect of the tenancy by the entireties estate. *See Schilbach,* 171 Md. at 408, 189 A. 432; *Masterman,* 129 Md. at 174, 98 A. 537. The wife, therefore, was deemed to have an equal right to the rents, profits, and income derived from the property. *See Wardrop v. Wardrop,* 211 Md. 14, 22, 124 A.2d 576 (1956); *Columbian Carbon Co.,* 207 Md. at 209, 114 A.2d 28; *Brown v. Brown,* 204 Md. 197, 212, 103 A.2d 856 (1954); *Elko v. Elko,* 187 Md. 161, 168, 49 A.2d 441 (1946); *Annapolis Banking & Trust Co. v. Neilson,* 164 Md. 8, 13–14, 164 A. 157 (1933).

Recent cases of this Court have demonstrated the continued validity and vitality of the tenancy by the entireties estate in Maryland. For example, in *Picking v. Yates,* 265 Md. 1, 288 A.2d 146 (1972), the Court said:

"No principle is better established in our law than that tenants by the entirety, because, unlike joint tenants, they hold *per tout et non per my,* must act together to sell their property, *Eastern Shore Bldg. & Loan Corp. v. Bank of Somerset,* 253 Md. 525, 253 A.2d 367 (1969); to subject it to any interest or encumbrance, *Lissau v. Smith,* 215 Md. 538, 138 A.2d 381 (1958), or to lease it, *Tizer v. Tizer,* 162 Md. 489, 160 A. 163 (1932). Similarly, both spouses must join in an action for damages to property which they own by the entirety, 2 Poe, *Pleading and Practice* § 428, at 18 (6th ed. 1970) not only because of the way title is held, but because Maryland may require on motion by a defendant that even tenants in common be joined as plaintiffs in an action *ex delicto* for damage to real property, *Gent v. Lynch,* 23 Md. 58, 64 (1865). The same rule applies in actions *ex delicto* where personal property is involved, *Koch v. Mack Motor Truck Corp.,* 201 Md. 562, 574, 95 A.2d 105 (1953). We are mindful that *Parish v. Maryland & Virginia Milk Producers Ass'n,* 250 Md. 24, 100–01, 242 A.2d 512 (1968) and *Toy v. Atlantic Gulf & Pacific Co.,* 176 Md. 197, 4 A.2d 757 (1939) may contain intimations to the contrary, but they must be read in the factual context of those cases." 265 Md. at 2–3, 288 A.2d 146.

In *State v. Friedman,* 283 Md. 701, 393 A.2d 1356 (1978), Judge Digges said for the Court:

"Among the additional incidents of entireties property are several that have special significance here. Included are the doctrines that property possessed in this fashion cannot be disposed of by one spouse without the consent of the other, *Ades v. Caplin,* 132 Md. 66, 69, 103 A. 94, 95 (1918), and that 'neither has such an interest in it as can be subjected to the lien of a judgment for his debts or as can be levied upon and sold under legal process against him.' *Phillips v. Krakower,* 46 F.2d 764, 765 (4th Cir.1931) (applying Maryland law); *see East. Shore v. Bank of Somerset,* 253 Md. 525, 532, 253 A.2d 367, 371 (1969); *Keen v. Keen,* 191 Md. 31, 37, 60 A.2d 200, 204 (1948); *Jordan v. Reynolds,* 105 Md. 288, 294, 66 A. 37, 38 (1907); *cf.* Md.

Const., Art. III, § 43. Further, separate judgments obtained by a single creditor against a husband and wife that are based on separate transactions will not suffice to create a lien on entireties property; only a judgment obtained against both husband and wife arising out of a joint obligation may be satisfied by execution upon property held by the entireties. *See, e.g., Lake v. Callis,* 202 Md. 581, 588, 97 A.2d 316, 319 (1953) (entireties property not subject to judgment against husband and wife if wife was surety on rather than maker of note); *A. Hupfel's Sons v. Getty,* 299 F. 939, 940–42 (3d Cir.1924) (applying Pennsylvania law) (assumption of husband's indebtedness by a wife is not joint act subjecting entireties property to judgment lien); *Southern Distributing Co. v. Carraway,* 189 N.C. 420, 127 S.E. 427, 428–29 (1925) (when husband only secondarily liable on debt, property held by entireties not subject to attachment since judgment not rendered on joint obligation); *cf. Frey v. McGaw,* 127 Md. 23, 25, 95 A. 960, 961 (1915)." 283 Md. at 705–06, 393 A.2d 1356.

In *Beall v. Beall,* 291 Md. 224, 434 A.2d 1015 (1981), Calvin and Cecelia Beall, husband and wife, purchased property as tenants by the entireties. In 1968 they granted Calvin's cousin, Carlton, a three-year option to purchase a part of the land. The option was extended for five years. Later an addendum was executed in a legally ineffective attempt to extend the option for three more years. Calvin died in 1977. In May 1978, Carlton indicated to Cecelia that he was exercising his "option" to purchase the property at the price established in 1968. She refused to sell at that price. Carlton then sued for specific performance. We held that Cecelia was not required to convey the property to Carlton because the bare offer to sell had lapsed upon the death of Calvin. *Beall,* 291 Md. at 235, 434 A.2d 1015. To reach this conclusion we enunciated a "team theory" approach to the tenancy by the entireties estate. The Court noted:

"[W]hen a husband and wife act together with respect to property held as tenants by the entirety, they are required, under traditional legal principles, to be of one

mind. Calvin and Cecelia signed a 1975 addendum not in their purely individual capacities but as a team. They acted together in making but a single offer to convey. The correct focus, then, is not upon the individual powers and capacities of Calvin and Cecelia with respect to their survivor interests, but upon the powers and capacities of each in their respective roles as tenants by the entirety." 291 Md. at 234, 434 A.2d 1015 (footnote omitted).

In applying this theory to the facts at bar, Judge Cole stated for the Court:

"Viewing the offer of tenants by the entirety as being made by a team rather than the two individuals who make up this team provides a solution in the instant case. The continuation of an offer made in this fashion depends upon the continuous assent of both tenants, for neither can continue an offer to sell without the continued assent of the other. Here, in the absence of consideration to support an option, the vitality of the offer made by Calvin and Cecelia depended upon the continued assent of each; upon Calvin's death, his assent was no longer viable. Hence, the offer lapsed upon the death of Calvin Beall." 291 Md. at 235, 434 A.2d 1015.

In summary, the tenancy by the entireties estate as it currently exists in Maryland has the following pertinent incidents: the husband and wife take the tenancy by the entireties property not by moieties but by the entirety; each spouse has an equal right to income derived from the tenancy by the entireties property but no right to compel an accounting during marriage, see *Howard v. Howard,* 245 Md. 182, 185, 225 A.2d 456 (1967); and neither spouse may lease, dispose of or encumber land held as tenants by the entireties without the consent of the other.

With regard to this last characteristic, several cases in Maryland have confronted the issue of whether the action of one spouse, which served to dispose of part or all of tenancy by the entireties property, was either expressly or implicitly authorized by the other, non-acting spouse. For example, in

*Kvedera v. Mondravitzky,* 145 Md. 260, 125 A. 591 (1924), husband and wife owned property as tenants by the entireties. The husband entered into a contract with Mondravitzky to construct a factory building on the property. Mondravitzky brought suit against both husband and wife after construction of the building, claiming he had not been fully paid for his services. The wife asserted that she could not be held liable for damages because she had not signed the contract. This Court stated that the wife's liability on the contract with the husband depended on the question of agency: if the husband acted with the wife's express or implied authority, then his acts would bind her; further, she might be bound if she ratified the husband's unauthorized acts. 145 Md. at 263–64, 125 A. 591. The Court stated that on remand, it would be necessary for Mondravitzky to show the husband's execution of the contract in his own name was for the benefit of both husband and wife as tenants by the entireties and that the husband either had authority to enter the contract on the wife's behalf as her agent or that she subsequently ratified it. For a somewhat similar holding see *Gribble v. Stearman & Kaplan, Inc.,* 249 Md. 289, 295–96, 239 A.2d 573 (1968).

In *Routzahn v. Cromer,* 220 Md. 65, 150 A.2d 912 (1959), the Court stated:

"This Court has repeatedly held that when property is owned by the entireties neither husband nor wife, acting alone, can encumber or dispose, of any part of the estate. *Columbian Carbon Co. v. Kight,* 207 Md. 203, 209, 114 A.2d 28; *Bukowitz v. Maryland Lumber Co.,* 210 Md. 148, 153, 122 A.2d 486; *Lissau v. Smith,* 215 Md. 538, 546, 138 A.2d 381; *William Penn Supply Corp. v. Watterson,* 218 Md. 291, 146 A.2d 420. And the relationship of principal and agent between a husband and wife may not be implied solely from the marital status of the parties. *Bukowitz v. Maryland Lumber Co.; William Penn Supply Corp. v. Watterson,* both *supra.* Consequently, any attempt on the part of Mr. Routzahn to grant or transfer any interest in the property when he initialed the proposed contract was

futile without the signature of Mrs. Routzahn, and the request for specific performance should have been denied." 220 Md. at 69–70, 150 A.2d 912.

Other cases of this Court also have involved the issue of whether one tenant by the entireties acted on behalf of the other. For example, in *Lissau v. Smith,* 215 Md. 538, 138 A.2d 381 (1958), the husband alone had executed a written lease. It was argued that the wife ratified the lease because she received rent from time to time. Judge Hammond said for the Court, "It seems apparent that she was under the belief that the property was rented on a month-to-month tenancy. The law does not infer ratification from receipts of benefits unless there is a full knowledge of the facts of the transaction. *Restatement, Agency,* Sec. 99." 215 Md. at 546, 138 A.2d 381. In *Grauel v. Rohe,* 185 Md. 121, 43 A.2d 201 (1945), the husband alone entered into a contract for sale of property owned as tenants by the entireties. The sale was not consummated. The buyer sued the husband for return of the downpayment. The Court pointed out that the wife was not called by the husband as a witness. In fact, she had not repudiated the agreement and apparently was entirely in accord with her husband in retaining the downpayment. The Court noted, "She was therefore in agreement with her husband in his endeavor to sell both the farm and the personalty to [Grauel], and under the facts in this case she was bound by her husband's action in the matter." 185 Md. at 127, 43 A.2d 201.

■ It is clearly established that both husband and wife must join in a lease of tenancy by the entireties property. *See Lissau,* 215 Md. at 546, 138 A.2d 381; *Columbian Carbon Co.,* 207 Md. at 209, 114 A.2d 28; *Tizer v. Tizer,* 162 Md. 489, 496, 160 A. 163 (1932); *Fox v. Fraebel,* 140 Md. 54, 58, 116 A. 876 (1922). As noted earlier, this principle derives from the fact that tenants by the entireties are considered to hold by the entirety and not by the moieties. Notwithstanding this firm judicial principle, courts have not often dealt with the question of whether both husband and wife must join in an

action to terminate a tenancy once the property has been leased.

Winer cites 1 Tiffany, *Landlord and Tenant* § 71 a (1910), which states relative to termination of a tenancy held from joint tenants, "If the lease is terminable by notice, either of the joint lessors may so terminate it, it seems, without the concurrence of the other." Tiffany cited to support this proposition an English case, *Doe d. Aslin v. Summersett,* 1 Barn. & Adol. 135 (1830). In that case the defendant held under a lease. Before the lease expired, the lessor devised the property to three persons as joint tenants, one of whom was deceased at the time of the action. When the lease expired, the tenant continued to occupy the premises as a tenant from year to year. As the court put it, "A notice to quit was duly served upon the defendant, but it was signed by one only of the lessors of the plaintiff, (though it imported to be given on behalf of himself and the other lessors,) and whether that notice put an end to the defendant's tenancy, was the question." *Id.* at 139–40. Two grounds were urged. The first was that the adoption of the lease by the other lessor of the plaintiff made it of the same validity as if it had been signed by both of them. The other was that without any such adoption a notice to quit by one of the joint tenants put an end to the tenancy as to both. The court observed, "[W]e are of opinion that the latter ground is right." *Id.* It then went on to say:

"Upon a joint demise by joint-tenants upon a tenancy from year to year, the true character of the tenancy is this, not that the tenant holds of each the share of each so long as he and each shall please, but that he holds the *whole* of *all* so long as he *and all* shall please; and as soon as any one of the joint-tenants gives a notice to quit, he effectually puts an end to *that* tenancy; the tenant has a right upon such a notice to give up *the whole,* and unless he comes to a new arrangement with the other joint-tenants as to their shares, he is compellable so to do." 1 Barn. & Adol. at 140–41 (emphasis in original).

Maryland courts have considered the issue of whether tenants in common or joint tenants must all join in an action of ejectment against a tenant in wrongful possession. With respect to tenants in common, the Court held that one tenant in common, who seeks to terminate a lease agreement concerning the property held with other tenants in common, may terminate the lease only as to his own interest where the others did not join or desire to join in the action. *See Cook v. Boehl*, 188 Md. 581, 53 A.2d 555 (1947); *Cook v. Hollyday*, 186 Md. 42, 45 A.2d 768 (1946). In *Cook v. Boehl*, the Court stated:

"Tenants in common may make such reasonable use of the common property as is necessary to enjoy the benefits of such ownership. Each cotenant has an equal right of entry and possession, and one cotenant cannot exclude the others by his own occupation of the land. Hence, one cotenant has no power to make a lease of the entire estate that will be binding upon his cotenants without their consent. Any cotenant, however, can lease his undivided interest either with or without the consent of the other cotenants. Such a lease transfers to the lessee for the term of the lease the possession and right in the property held by the lessor, and makes the lessee a tenant in common with the other owners. *Prairie Oil & Gas Co. v. Allen*, 8 Cir. [1924], 2 F.2d 566, 40 A.L.R. 1389. Likewise, one colessor cannot terminate the lease as to the interests of the other colessors, if the notice to terminate is not in behalf of the others; but one colessor can terminate the lease as to his own interest without the concurrence of the others. *Cook v. Hollyday*, 186 Md. 42, 45 A.2d 768." 188 Md. at 592–93, 53 A.2d 555.

■ In regard to joint tenants, it first must be noted that they hold the joint tenancy property by the moieties and not by the entirety: they each have not only an interest in the whole but also a separate, undivided, individual interest. The Court in *Crowe v. Houseworth*, 272 Md. 481, 325 A.2d 592 (1974), noted that all joint tenants must join in any action for injuries to real property. The rationale behind

this rule is to prevent multiplicity of suits. The Court stated, however, that a rigid application of the rule might result in the frustration of one joint tenant's right to relief by the recalcitrance of his co-tenant. Therefore, in some cases the solution has been to allow one joint tenant to recover his proportional share of damages. Likewise, a tenant in common has been permitted to recover the entire amount of damages and to hold the proportionate share for his co-tenant. *Crowe,* 272 Md. at 483–84, 325 A.2d 592.

Notwithstanding cases involving joint tenants or tenants in common, we have found but one case in our research relative to termination of a tenancy held from tenants by the entireties. It arose so many years ago and under such a different concept of the role of women from that existing today that we regard it as lacking in precedential value. That case is *Pollok v. Kelly,* 6 Ir.-C.L.Rep. 373, 8 Ir.Jur. 360 (1856). The court stated:

"[W]here a married woman takes property in her own right there is no doubt the husband has such an estate as enables him to convey a freehold interest to a third person during the husband's life, or during the joint lives of the husband and wife. We think that he has such a legal estate in the premises as to enable him to convey to another a legal estate, for instance, to make him a tenant to the *praecipe;* and we also think that any one who has the present legal estate can serve such a notice as this; and we think it perfectly clear he can do so without the concurrence of his wife. We do not mean to determine what the effect would be of the death of the husband before the period when the notice expired, for as the husband has survived that period, and the legal estate is in full existence, all we have to consider is, whether it was such a notice as would determine the tenancy." 8 Ir.Jur. at 363.

Certainly ordinary principles of agency law would permit one spouse to act as the agent of another in giving such notice. An application of *Kvedera,* 145 Md. 260, 125 A. 591, would be authority for a holding that even though one

spouse did not act as the agent of the other in giving such notice there could be ratification of the notice. *See also Supreme Builders v. Redmiles,* 250 Md. 446, 456, 243 A.2d 500 (1968) (Wife's agreement was necessary to compromise boundary dispute involving land owned as tenants by the entireties). It is obvious in this instance that the husband did not act as the agent of the wife, nor has she ratified the notice. In *Tizer,* 162 Md. 489, 160 A. 163, Judge W. Mitchell Digges said for the Court on the issue of whether one spouse could let land owned as tenants by the entireties:

> "The estate is neither that of the husband with his wife, nor of the wife with her husband, but of husband and wife as one person. Keeping in mind the nature of this estate, and the former decisions of this court in *Marburg v. Cole,* 49 Md. 402; *McCubbin v. Stanford,* 85 Md. 378, 37 A. 214; *Brewer v. Bowersox,* 92 Md. 567, 48 A. 1060; *Jordan v. Reynolds,* 105 Md. 288, 66 A. 37; *Reed v. Reed,* 109 Md. 690, 72 A. 414; *Frey v. McGaw,* 127 Md. 23, 95 A. 960; *Stieff Co. v. Ullrich,* 110 Md. [629] 634, 73 A. 874; and *Masterman v. Masterman,* 129 Md. 167, 98 A. 537, no conveyance of property so held can be made except by the joint act of the husband and wife, and this includes conveyance by way of lease as well as by fee simple deed or mortgage." 162 Md. at 495–96, 160 A. 163.

We have said that the nature of the tenants by the entirety estate is that each holds the whole or the entirety, and not by the moiety; we have referred to the fact that neither party holds a separate interest; we said that each party is entitled to the whole; likewise, we have said that there are no indivisible parts, but one owner; we have said that spouses must be of one mind, that they must act together to sell their property, to lease it, or to subject it to any encumbrance. Each of these phrases means the same thing. Given the nature of the estate and these expressions by us, it strikes us that it follows that to terminate a letting from tenants by the entireties, a notice from or on behalf of both spouses is necessary. Here there was clear evidence that the notice was only on behalf of the husband. It

follows, therefore, that the judges below erred in granting a judgment for the husband to repossess the premises.[1]

JUDGMENT REVERSED; APPELLEE TO PAY THE COSTS.

---

[1] The husband argues that this was a "small claims" action in the District Court, that under M.D.R. 568 such proceedings are to be conducted "in an informal manner without being bound by technical rules of procedure or evidence," and that Maryland Rule 1314 e specifies that appeals and actions tried under M.D.R. 568 "shall be tried *de novo* in an informal manner without the court being bound by technical rules of procedure or evidence, except those relating to privileged communications, and shall be decided so as to do substantial justice between the parties, according to substantive law." He points to cases such as *Crowe v. Houseworth,* 272 Md. 481, 485, 325 A.2d 592 (1974), where we referred to the joinder of a co-tenant in an action as a "nicet[y] of pleading," and *Brown v. Ravenscraft,* 88 Md. 216, 224, 44 A. 170 (1898), where, in a replevin action, the Court characterized the objection of the omission of a joint owner as a party plaintiff as a "technical defense." Hence, it is argued that the action here should not be determined upon the technical nicety of the failure to join the wife as a party to the action for repossession of the premises. In the view we take of the case we are not obliged to address that point because the notice upon which the action was based was defective.